**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| BARBARA J. GATES, ET AL., ) | CASE NO. 1:06 CV 678 |
| ) | |
| PLAINTIFFS, ) | JUDGE SARA LIOI |
| ) | |
| vs. ) | |
| ) | MEMORANDUM OPINION AND |
| ) | ORDER OF REMAND |
| THE OHIO SAVINGS BANK ) | |
| ASSOCIATION n/k/a/ AMTRUST ) | |
| BANK ) | |
| ) | |
| DEFENDANTS. ) | |

Plaintiffs Barbara J. Gates and Charles Gates ("Plaintiffs") filed the present action against defendant The Ohio Savings Bank Association[1] ("Defendant" or "Ohio Savings") alleging breach of contract, fraud, violations of 15 U.S.C. § 1601, *et seq*. (the Truth in Lending Act, "TILA"), and demanding an accounting from Defendant.

Pursuant to Fed. R. Civ. P. 56, Defendant filed a motion for summary judgment as to all of Plaintiffs' claims. (Docket No. 23.) Plaintiffs opposed the motion (Docket No. 33), and Defendant filed a reply. (Docket No. 36.) For the reasons that follow, Defendant's motion is **GRANTED, in part**.

**I.      FACTUAL BACKGROUND**

On November 24, 1981, Plaintiffs Barbara J. Gates and Charles Gates entered into a mortgage loan refinancing transaction with Defendant, whereby Defendant

---

[1] The Court notes that, subsequent to Plaintiffs filing the Complaint, Defendant has changed its name to "Ohio Savings Bank," then "AmTrust Bank." For the sake of remaining consistent with the pleadings submitted to date, the Court will refer to Defendant by the name "Ohio Savings."

disbursed $96,067 to Plaintiffs, pursuant to their signing a 30-year Open-End Roll-Over Mortgage Note ("Note") and a Rider thereto. (Pls.' Mem. and Materials Submitted in Opp. to Def.'s Mot. for Summ. J., Docket No. 33, 1.) These documents provided for a variable interest rate which adjusted every six months, subject to a floor rate and one of two ceiling rates, per the terms of the Rider. (Note, Docket No. 1, Attach. No. 1, Ex. A, 1.)

In 1982, Defendant discontinued offering and using open-end roll-over mortgage notes for new mortgage loan transactions. (Pls.' Opp., Docket No. 33, Attach. 1, 8.) Pursuant to a clause in the Note governing such circumstances, Defendant began to charge Plaintiffs the interest rate corresponding to one of its newly offered loan products, the Adjustable Rate Mortgage ("ARM") loan. *Id*. Plaintiffs received monthly mortgage statements from Defendant identifying the current interest rate and other details regarding their mortgage. (Gates Dep., Docket No. 27, 183-84.) Plaintiffs also received a notice from Defendant every six months identifying the new interest rate pursuant to the ARM. (Gates Dep., Docket No. 27, 88; Gates Dep. Ex. 19.)

Plaintiff Charles Gates has stated that, as early as the first six-month interest rate adjustment in 1982, he believed Defendant's calculation of the interest rate it charged Plaintiffs was inconsistent with the terms of the Note, thereby running afoul of TILA. (Gates Dep., Docket No. 27, 89.) In 1993, Mr. Gates began calling and writing to Defendant, seeking more information about the Note, and the interest rate calculation in particular. *Id*. at 5-8, 101-104, 231-234. Receiving no response from Defendant, Mr. Gates contacted an attorney in 1993 to explore potential claims against Defendant. *Id*. at 107-108. In approximately 1995, Mr. Gates contacted another attorney to explore potential claims against Defendant. *Id*. No claims against Defendant were filed as a result of these contacts.

Between 1998 and 2005, Mr. Gates wrote a number of letters to Defendant seeking information regarding the interest rate charged on Plaintiffs' Note. (Charles Gates Affadavit, Docket No. 33, Attach. No. 1, ¶8.) The first response Mr. Gates received from Defendant was a letter dated October 6, 2005, and signed by David L. Yahr, a vice president of Ohio Savings. *Id*. at ¶9. The letter acknowledged Defendant's lack of responses to his prior inquires and explained the method by which Defendant had calculated the interest rate. *Id*. Plaintiffs then filed the instant action on February 24, 2006. (Complaint, Docket No. 1, Attach. No. 1.)

## II.  STANDARD OF REVIEW

This Court's consideration of the motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure:

> (c) The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Id.* The party opposing a motion for summary judgment made according to rule "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The entry of summary judgment is not a disfavored procedural shortcut, but instead is mandated by "the plain language of Rule 56(c) . . . after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party's

burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The party opposing a motion for summary judgment may do so with "any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Id.* at 324. The nonmoving party's showing must be of more than a "metaphysical doubt as to the material facts," *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); rather, the nonmoving party "must present significant probative evidence in support of its complaint to defeat the motion for summary judgment." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993). In addition, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. Moreover, the non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

4

Ultimately, the moving party does bear the initial burden of proof under Fed. R. Civ. P. 56(c). If the Court finds that moving party has satisfied this burden, however, the non-movant is obligated to "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky DOT*, 53 F.3d 146, 149 (6th Cir. 1995). A Plaintiff is thus not permitted to rest upon the allegations in the Complaint. Rather, Plaintiff will have to produce affirmative evidence in support of each and every element of each claim. *Id*. at 150. In light of this standard, the Court considers Defendant's dispositive motion.

### III. LAW AND ANALYSIS

Plaintiffs allege that Defendant failed "to correctly advise or inform Plaintiffs … of the rate of interest being charged and the method of calculating said rate of interest," "omitted to advise and inform Plaintiffs of information material to the Adjustable Rate Note," and "further failed to supply the information required by the federal Truth-in-Lending Act to be furnished to variable rate customers." (First Amended Complaint, Docket No. 11, ¶¶ 4, 9, 11.) Plaintiffs argue that until receiving Mr. Yahr's letter, Defendant failed to advise or inform them of the rate of interest charged and the method of calculating the rate of interest over the life of the Note, and thus Defendant fraudulently concealed its TILA violations, which should toll the statue of limitations. Plaintiffs further contend that it was upon receipt of Mr. Yahr's letter in October, 2005 that they first had a reasonable belief they were being overcharged by Defendant, thus commencing the statute of limitations for that claim.

Defendant argues, however, that since entering into the loan transaction in 1981, and well before receiving Mr. Yahr's letter in 2005, Plaintiffs had a reasonable opportunity to discover any alleged violation by Defendant. Further, Defendant claims that Plaintiffs cannot meet the requirements for establishing fraudulent concealment, namely affirmative acts of

5

concealment and due diligence. Thus, Defendant maintains that Plaintiffs' TILA claim is time-barred.

### a. <u>TILA Statute of Limitations</u>

TILA provides, in pertinent part, "Any action under this section may be brought in any United States district court, or in any court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The party seeking to avoid the statute of limitations bears the burden of proof. *Grand Rapids Plastics v. Lakian*, 188 F.3d 401, 406 (6th Cir. 1999).

The Sixth Circuit has provided guidance in determining when a TILA violation occurs for statute of limitations purposes. *Wachtel v. West*, 476 F.2d 1062 (6th Cir. 1973). "A credit transaction which requires disclosures under [TILA] is completed when the lender and borrower contract for the extension of credit. The disclosures must be made sometime before this event occurs. If the disclosures are not made, this violation of [TILA] occurs, at the latest, when the parties perform their contract." *Id.* at 1065. In *Wachtel*, plaintiffs borrowed money from defendants on October 28, 1970, offering a second mortgage on their home as security. Defendant failed to make required disclosures at that time. Because plaintiffs' filed their complaint on April 25, 1972, nearly eighteen months after the contract had been signed, the court held that the one-year statute of limitations on their TILA claim had run, and that the claim was time-barred. *Id.* at 1065-1066. The Court also distinguished the statute of limitations for an action for rescission under TILA, 15 U.S.C. §1635, which "seems to contemplate a continuing violation" from the statute of limitations for an action for damages under TILA, 15 U.S.C. §1640, which begins to run "when the lender and borrower contract for the extension of credit." *Wachtel*, 476 F.2d at 1065.

In the case at hand, the one year statute of limitations in 15 U.S.C. §1540 bars Plaintiffs' TILA claim. Plaintiffs allege failure to disclose requisite information under TILA when the parties entered into their loan transaction agreement on November 24, 1981. Yet, as binding Sixth Circuit precedent illustrates, the latest the statute of limitations could begin running absent equitable tolling was the date the note was signed, November 24, 1981. *Wachtel*, 476 F.2d at 1065. Plaintiffs failed to file their complaint until February 24, 2006, more than 24 years after the alleged violations occurred. Thus, absent equitable tolling, Plaintiffs' claim is time-barred.

### b. Equitable Tolling

The Sixth Circuit has provided for equitable tolling of TILA's statute of limitations in certain limited situations. Acknowledging TILA's express purpose as a statute intended to protect consumers from the uninformed use of credit and TILA's remedial nature, the court has noted, "[T]he statute of limitations for actions brought under 15 U.S.C. § 1640(e) is subject to equitable tolling in appropriate circumstances, and that for application of the doctrine of fraudulent concealment, the limitations period runs from the date on which the borrower discovers or had reasonable opportunity to discover the fraud involving the complained of TILA violation." *Jones v. TransOhio Savings Association*, 747 F.2d 1037, 1043 (6th Cir. 1984). A plaintiff asserting fraudulent concealment must establish: (1) defendant wrongfully concealed its actions; (2) plaintiff failed to discover the operative facts that are the basis of his cause of action within the statute of limitations period; and (3) plaintiff's due diligence until discovering said operative facts. *Hamilton Cty Bd of Comm. V. N.F.L.*, 491 F.3d 310, 315 (6th Cir. 2007) *citing Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F. 2d 389, 394 (6th Cir. 1975).

In other words, "to meet [the standards governing when a federal statute of

7

limitations may be tolled], a plaintiff must show not only that he exercised due diligence to discover his cause of action prior to the running of the statute, but also that the defendant was guilty of some affirmative act of fraudulent concealment which frustrated discovery notwithstanding such diligence." *Hughes, et al. v. Cardinal Federal Savings & Loan Association*, 566 F.Supp. 834, 838 (S.D. Ohio 1983) (internal quotation marks omitted), *citing Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.3d 594, 597 (4th Cir. 1976); s*ee also Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 891 (6th Cir. 2004) (fraudulent concealment requires a showing that defendant took "active steps" such as fraudulent statements, hiding evidence, or promising not to plead the statute of limitations). Applying this doctrine thus "requires more than mere non-disclosure" by Defendant. *Hughes*, 566 F.Supp. at 838. *See also*, *Boursiquot v. CitiBank F.S.B.*, 323 F.Supp.2d 350, 354 (D. Conn. 2004) ("It is generally established that mere nondisclosures provide insufficient grounds for tolling the statute of limitations, regardless of when the plaintiffs should have discovered the nondisclosure.") (citing *In re Smith,* 737 F.2d 1549, 1552 (11th Cir. 1984); *Bartholomew v. Northampton National Bank*, 584 F.2d 1288, 1296 (3d Cir. 1978)).

Plaintiffs have failed to establish Defendant's wrongful concealment of its actions to warrant equitable tolling. Plaintiffs must offer evidence of some affirmative act of fraudulent concealment by Defendant, which frustrated discovery of their cause of action, notwithstanding their due diligence. *See Hamilton Cty.*, 491 F.3d at 315; *Hughes*, 566 F.Supp. at 838; *Bridgeport*, 371 F.3d at 891. Here, no such evidence is offered. In Mr. Yahr's October 6, 2005 letter, Defendant acknowledged its lack of responses to Mr. Gates' prior inquiries, but this "mere non-disclosure by Defendant" is insufficient to establish fraudulent concealment. *Hughes*, 566 F.Supp at 838 (if each non-disclosure under TILA warranted

8

equitable tolling, "the one-year statute of limitations would be tolled in almost every Truth-in-Lending action in which a non-disclosure violation was found and the statutory limitations provision would be a nullity."). Indeed, the representations that Plaintiffs attempt to claim constitute fraudulent concealment, namely the statements describing the current interest rate the Gates were being charged, were the actual mortgage rates the Gates were being charged — not a "misrepresentation" for equitable tolling purposes.

Even if Plaintiffs were correct in claiming Defendant's actions amounted to affirmative fraudulent concealment, Plaintiffs' claim still would be time-barred. At most, Plaintiffs claim Defendants committed "active concealment and nondisclosure in the face of Plaintiffs' requests for information back to 1998." (Plantiff's Opp. to Summ. J., Docket No. 33, 28). The alleged TILA violation, however, occurred, at the latest, on November 24, 1981. *See* 15 U.S.C. §1640(e); *Wachtel*, 476 F.2d at 1065. Thus, absent evidence of fraudulent concealment between November 24, 1981 and November 24, 1982, the one-year limitations period expired on November 24, 1982. Plaintiffs have no allegations of affirmative acts of fraudulent concealment prior to 1998, though. Further, Plaintiffs have provided no evidence of due diligence prior to 1993, while they admittedly had been receiving statements declaring the applicable interest rate since 1982. *See Hughes*, 566 F.Supp. at 838 (requiring plaintiff to "show that he exercised due diligence to discover his cause of action prior to the running of the statute"). Equitable tolling therefore does not apply to the facts of this case.

Ultimately, Plaintiffs continually received monthly statements regarding the interest rate from Defendant, and notices every six months regarding the newly applicable interest rates from Defendant, and began to discuss with attorneys possible claims against Defendant in 1993. Despite these occurrences, they still failed to inquire as to the alleged

fraudulent concealment until 1993 at the earliest, and to file the instant action until February 24, 2006. Thus, there are no genuine issues of material fact as to Plaintiffs' TILA claim being barred by the statute of limitations, and Defendants are entitled to judgment as a matter of law.

## V.  REMAINING STATE LAW CLAIMS

The Court declines to retain jurisdiction over Plaintiffs' remaining claims against Defendant in this matter, pursuant to 28 U.S.C. § 1367, which provides:

> **(a)** Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
>
> \* \* \*
>
> **(c)** The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> \* \* \*
>
> **(3)** The district court has dismissed all claims over which it has original jurisdiction.

The Court had original jurisdiction over Plaintiffs' TILA claim, and supplemental jurisdiction over Plaintiffs' claims of breach of contract, fraud, and an accounting. After finding the TILA claim time-barred, the Court declines to exercise supplemental jurisdiction over the remaining claims. *See Sagglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial, . . . the state claims [generally] should be dismissed as well."); *Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of

comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

## VI.     CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Docket No. 23) is **GRANTED** as to Plaintiffs' claim alleging violation of 15 U.S.C. §1601, et seq. (Truth in Lending Act) (Plaintiffs First Amendment Complaint, Third Cause of Action). The Court declines to rule on the remaining state claims and, therefore, such claims are hereby remanded to the Geauga County Court of Common Pleas.

**IT IS SO ORDERED.**


Dated: September 17, 2007                     *s/  Sara Lioi*
                                              **HONORABLE SARA LIOI**
                                              **UNITED STATES DISTRICT JUDGE**